NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

————

No. 09-2926

————

CURTIS SMITH,
                    Appellant

v.

JOHN KERESTES; THE DISTRICT ATTORNEY OF
THE COUNTY OF PHILADELPHIA; THE ATTORNEY
GENERAL OF THE STATE OF PENNSYLVANIA

————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-08-cv-00061)
District Judge:  Hon. Berle M. Schiller

————

Submitted Under Third Circuit LAR 34.1(a)
February 14, 2011

Before:  SLOVITER, HARDIMAN and ALDISERT, *Circuit Judges*

(Filed: February 23, 2011)

————

OPINION

SLOVITER, *Circuit Judge.*

A jury found Appellant Curtis Smith guilty of attempted murder, aggravated assault, simple assault, burglary and conspiracy and not guilty on three additional charges. He was sentenced to 13.5 to 27 years imprisonment.

After an unsuccessful direct appeal, Smith challenged his conviction under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Con. Stat. §§ 9541, *et seq.* On appeal from a denial of collateral relief, the Superior Court found that Smith's reliance on *Commonwealth v. Johnson*, 828 A.2d 1009, 1015-16 (Pa. 2003) (trial court's reiterative jury instruction during deliberations without presence of counsel found to be presumptively prejudicial) was misplaced because Smith was not deprived of counsel at a critical stage. Unlike *Johnson*, where counsel objected to the instruction given, Smith's counsel agreed that the judge could go to the deliberation room "to clarify the jurors' question, and [unlike *Johnson* where the trial court refused to answer one of the jury's questions] all questions raised by the jurors were answered." App. at 601 n.5. The Superior Court affirmed dismissal of the PCRA petition, finding that Smith's trial counsel was not ineffective for failing to object to the trial judge's *ex parte* communications with the jury because "it is axiomatic that counsel will not be considered ineffective for failing to pursue meritless claims." App. at 601 (quotation omitted).

Thereafter, Smith filed the instant writ of habeas corpus under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") in the Eastern District of Pennsylvania. The District Court, adopting the reasoning of the Magistrate Judge, dismissed all of Smith's claims and granted a Certificate of Appealability ("COA") on a

2

single issue: whether Smith's ineffective assistance of counsel claim should be analyzed under *Strickland v. Washington*, 466 U.S. 668 (1984), as the District Court found, or *United States v. Cronic*, 466 U.S. 648 (1984).[1] We will affirm.[2]

Inasmuch as we write primarily for the parties, who are familiar with this case, we need not recite additional factual or procedural background.[3]

Clearly Established Federal Law

The Supreme Court has set forth a two-prong test for evaluating ineffective assistance of counsel claims. *Strickland*, 466 U.S. at 687; *see also Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) (recognizing that the Pennsylvania standard for judging ineffectiveness claims is identical to the standard enunciated in *Strickland*). First, a petitioner "must show that counsel's performance was deficient" in that it fell below an

---

[1] The District Court certified for appeal a review of its determination regarding the applicability of *Cronic*. However, under AEDPA, it is not the District Court's opinion we review but rather the state court's. The State argues that the COA is invalid because the issue "was not presented by Smith in his federal habeas petition" and Smith has made no substantial showing of the denial of a constitutional right. Appellee's Br. at 3. We disagree. Although Smith did not frame his ineffective assistance of counsel claim as falling under *Cronic*'s presumption of prejudice, the petition was filed pro se and should be construed liberally. *See Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999) ("We apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name.").

[2] The District Court exercised jurisdiction pursuant to 28 U.S.C. § 2254, and we have jurisdiction under 28 U.S.C. § 2253 and 28 U.S.C. § 1291. Our review is plenary. *Palmer v. Hendricks*, 592 F.3d 386, 391-92 (3d Cir. 2010). Under AEDPA, a petition may not be granted unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

[3] We thank Peter A. Levin, appointed counsel, for his representation of Smith in this appeal.

objective standard of reasonableness under prevailing professional norms. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). Second, a petitioner must show that the deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687 (prejudice shown if there is a reasonable probability that, but for counsel's errors, the result "would have been different").

In *Cronic*, the Supreme Court held that a Sixth Amendment violation of the right to counsel may be found without showing prejudice where "circumstances [exist] that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." 466 U.S. at 658. For example, automatic reversal is required where there has been a complete denial of counsel at a critical stage of the criminal proceedings. *Id.* at 659. The Supreme Court has clarified that the phrase "critical stage" denotes "a step of a criminal proceeding, such as arraignment, that h[olds] significant consequences for the accused." *Bell v. Cone*, 535 U.S. 685, 696 (2002). This court has narrowly construed *Cronic* to "prescribe[] a presumption of prejudice only with regard to those critical stages of litigation where a denial of counsel would necessarily undermine the reliability of the entire criminal proceeding." *Ditch v. Grace*, 479 F.3d 249, 255 (3d Cir. 2007).

There are conflicting views among several courts of appeals as to whether mid-deliberation communication with the jury constitutes a critical stage under *Cronic*. In *United States v. Toliver*, 330 F.3d 607, 615 (3d Cir. 2003), this court held that a defendant was not entitled to a presumption of prejudice when the trial judge failed to consult with defense counsel before responding to a jury note. This court distinguished the situation presented in *Toliver* from that in other courts of appeals where

4

communications with the jury during deliberations have been found to constitute a critical stage:

> Clarifying the substantive elements of the charged offense . . . or instructing a deadlocked jury . . . affirmatively guides jurors as to how they should fulfill their decisionmaking function. But submitting verbatim specifically excerpted record testimony that the jury itself had requested does not similarly "instruct" the jury.

*Id.* at 614; *cf. French v. Jones*, 332 F.3d 430, 438 (6th Cir. 2003) (holding delivery of supplemental instruction to a deadlocked jury without consulting counsel required automatic reversal under *Cronic*); *Curtis v. Duval*, 124 F.3d 1, 4 (1st Cir. 1997) (holding recalling jury for supplemental instructions on lesser offense of manslaughter after deliberations were underway was a critical stage under *Cronic*).

The Ninth Circuit has rejected the distinction between cases involving the delivery of new, supplemental jury instructions from those in which the jury is given previously agreed-upon instructions or is read back testimony. *Musladin v. Lamarque*, 555 F.3d 830, 841-42 (9th Cir. 2009). In that case, the Ninth Circuit defined the "stage" at which the deprivation of counsel may be critical as the "*formulation* of the response to a jury's request for additional instructions, rather than its delivery." *Id.* at 842 (emphasis in original). The Ninth Circuit stated that if it had de novo review, it would have found that the defendant was denied counsel at a critical stage under *Cronic*. *Id.* However, the Court found that it was not objectively unreasonable for the state court to have determined that referring the jury back to the original jury instructions to clarify the substantive elements of the crime is not a critical stage under *Cronic*. *Id.* at 843

5

("potential impact of defense counsel's inability to participate is significantly lessened, because defense counsel played a role in the formulation of those instructions").

Unlike the dictum voiced by the Ninth Circuit in *Musladin*, the First Circuit held that *Cronic*'s presumption of prejudice did not apply to a mid-deliberation communication between the judge and the jury because it only applies to a "wholesale" denial of counsel, not a "short-term, localized" denial of counsel. *Ellis v. United States*, 313 F.3d 636, 643 (1st Cir. 2002) (quotation omitted). Similar to the case at bar, in *Ellis* the jury inquired: "Does it have to be unanimous to be not guilty on a[sic] indictment if the vote come [sic] out uneven?" *Id.* at 642. The trial court, without consulting counsel, responded "[t]he verdict on all counts must be unanimous." *Id.*

Application of Law to This Case

After the close of Smith's trial, the jury sent a note to the court indicating that a juror had a question regarding the testimony of the State's witnesses. The parties' attorneys agreed to allow the judge to question the jurors *ex parte* to clarify the request. The judge clarified the question, returned to the courtroom, and explained the jury's inquiry to the parties. The court then delivered an agreed upon response to the jury.[4]

After a weekend recess, the jury sent another note to the court asking: "Does the finding in one charge negate the opposite finding in all the other charges." App. at 577. Again unclear of what the jury was asking, the parties' attorneys agreed to allow the judge to ask the jury *ex parte* to clarify its inquiry and return to the courtroom to consult

_____

[4] Smith appears to have abandoned any argument that he was deprived effective assistance of counsel during the first communication.

6

with counsel before providing a response.  After that clarification, the judge provided an answer to the jury immediately without discussing an appropriate response with counsel. The judge explained to the jury that the charges are "not a package" and that the jury "can find guilty on certain charges," and "not guilty on other charges."  App. at 579-80. The judge stated: "If, for example – this is only for example – if you find not guilty of burglary, it doesn't mean you couldn't find on attempted murder or vice vers[a]."[5]  App. at 580.  The judge returned to the courtroom and related to counsel the nature of the jury's question and his response.  The State's attorney responded "Okay" and Smith's attorney made no comment.  App. at 582.  Within fifteen minutes of receiving these instructions, the jury returned its verdict.

The situation was regrettable.  It has long been recognized that expediency must at times yield to the integrity of the process.  The presence of counsel is particularly important during deliberations as jurors "are particularly susceptible to influence at this point, and any statements from the trial judge-no matter how innocuous-are likely to have some impact." *Musladin*, 555 F.3d at 840.  It can be argued that under *Toliver* this response affirmatively guided the jury in its decisionmaking function and the absence of counsel from the response brings this case within *Cronic*.  Notwithstanding, this court cannot say that it was objectively unreasonable for the state court to conclude that the

---

[5] This is similar to a previous instruction given in open court with the consent of the parties wherein the court instructed: "In your deliberations you must make a separate decision to each crime.  Furthermore, as to each element as well.  To find that Mr. Smith is guilty of a crime you must find that each part or element of the crime happened and that he is the guilty person."  App. at 514-15.

7

*Cronic* presumption of prejudice does not apply to these circumstances. *See Siehl v. Grace*, 561 F.3d 189, 195 (3d Cir. 2009) (Under AEDPA, we ask whether the state court's application of federal law was "objectively unreasonable," not whether the application was erroneous or incorrect.). Smith's counsel was present during the entire hearing, did not object to the trial judge entering the jury room to clarify the questions (in fact, counsel encouraged the judge to do so), and made no objections to the response provided by the judge to the jury's inquiry. Indeed, the trial court's response was substantially similar to previously agreed upon instructions. We agree with the District Court that the jury's note "indicates that they had reached at least a partial verdict, and their only question was whether their mixed verdict was legally permissible." *Smith v. Kerestes*, 2009 WL 1676136, at *12 (E.D. Pa. June 15, 2009).

Moreover, although Smith has not explicitly conceded his inability to show prejudice, we note that he argued for a presumption of prejudice without advancing any argument regarding what trial counsel would have done differently or how such modified instructions would have affected the outcome. *See United States v. Morrison*, 946 F.2d 484, 503 n.7 (7th Cir. 1991) ("Even when engaging in a *Cronic* inquiry . . . we are never completely loosed from the factual moorings of the case before us."). The state court properly reviewed Smith's claim under *Strickland*.[6]

Accordingly, we will affirm the District Court's judgment, denying Smith's § 2254 petition.

---

[6] Smith does not appeal the District Court's analysis of his claims under *Strickland*.

8